UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS – SPRINGFIELD DIVISION

| | |
|---|---|
| MARVIN LADELY, | ) |
| Plaintiff, | ) |
| v. | ) NO. 04-3237 |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY, | ) |
| Defendant. | ) |

**OPINION**

CHARLES H. EVANS, U. S. Magistrate Judge:

The Court now considers the parties Cross-motions for Summary Judgment.

**FACTS**

Plaintiff alleges that he is disabled due to low back fusion with screws, right leg amputation, and depression. Plaintiff claims he became disabled on November 1, 2001. See Tr. at 321-23. On October 22, 2002, he applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under 42 U.S.C. §§ 416(i), 423(d), and 1381(a) of the Social Security Act. Id. at 93-95. His claims were denied initially, on reconsideration, and after a hearing

1

before an administrative law judge (ALJ) (Tr. 11-21, 62, 63, 324, 331-34).

Plaintiff was 51 years old at the time the ALJ denied his claims. He weighed 168 pounds and stood 5'6" tall (Tr. 237). He had a high school education and past work experience as a draftsman, a carpenter, a fire extinguisher, and a maintenance man (Tr. 15).

On September 21, 2004, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision the Commissioner of Social Security ("Commissioner") (Tr. 4-6). Plaintiff seeks judicial review of that final decision by the Commissioner.

*Medical Evidence of Plaintiff's Physical Impairments[1]*

On December 5, 2002, Plaintiff had a consultative medical evaluation with Dr. Budzenski (Tr. 236-40). Plaintiff's right lower leg had been amputated after a motor vehicle accident in August 1989 (Tr. 236). Although Plaintiff had been performing maintenance work since that injury, his prosthetic leg broke in the month that preceded the consultation. Thus, Plaintiff was unable to perform maintenance work, such as mowing yards, fixing lights, repairing furniture, and painting (Tr. 236). Due to his broken prosthesis, Plaintiff was

---

[1] The Commissioner's memorandum of law thoroughly recites the evidence of Plaintiff's physical impairment. This section of the instant Order incorporates the Commissioner's recitation and adds to it, when necessary, via materials presented in Plaintiff's memorandum or other information culled from the record.

unable to stand long enough to keep a job (Tr. 236). Furthermore, Plaintiff had pain in his low back, some nausea from his pain medication, and a history of depression (though he no longer received treatment for depression) (Tr. 236). Despite all of this, Plaintiff said he could perform all of his basic activities of daily living (Tr. 237).

An examination of Plaintiff's dorso-lumbar spine showed no muscle spasm or tenderness to palpation (Tr. 238). Forward flexion was limited to 45 degrees and extension was limited to 20 degrees (Tr. 238). A lumbar spine X-ray showed metallic compression at the L4-5 level and marked degenerative changes at the L3-S1 level (Tr. 234). No fracture or osseous destructive process was seen (Tr. 234). As a result of examination and X-ray findings, Dr. Budzenski diagnosed status post right lower leg amputation below the knee, history of spinal injury status post fusion, history of illicit drug abuse in apparent remission, and tobacco abuse (Tr. 240).

On February 27, 2003, Dr. Graham, a state agency physician, reviewed the medical evidence and opined that Plaintiff could lift less than 10 pounds frequently, stand and/or walk at least 2 hours in an 8-hour workday, and sit for 6 hours in an 8-hour workday, but needed to avoid workplace hazards (Tr. 264-70). On April 24, 2003, Dr. Burris, a second state agency physician

reviewed the medical evidence and agreed with Dr. Graham's assessment (Tr. 270). In June 2003, Plaintiff began treatment at the Veterans Administration for low back pain (Tr. 288-91). Plaintiff reported being in generally good health (Tr. 289). Plaintiff reported that he had heartburn everyday which he controlled by taking Tums (Tr. 289). Plaintiff denied any constipation, diarrhea or vomiting (Tr. 289). Plaintiff's physical and mental examinations yielded generally normal results (Tr. 289-90). Plaintiff was advised to exercise aerobically for 20-30 minutes 3 times a week and to increase his daily physical activity, as well as adhere to a low cholesterol diet (Tr. 292).

In August 2003, Plaintiff requested a new prosthesis because his old prosthesis had broken sometime in February 2002 (Tr. 287). Plaintiff reported that he attempted to glue the prosthesis back together; however, it became loose and was not fitting properly, which caused pressure sores on the end of his right stump (Tr. 287). Plaintiff was fitted with a new prosthesis (Tr. 287).

On December 9, 2003, Plaintiff was wearing his fifth prosthesis, (Tr. 281). He reported that the prosthesis worked okay and that he was walking and doing activities as tolerated (Tr. 281). Plaintiff had some skin abrasion, but no erythema, and he had a full range of motion and normal gait (Tr. 281).

On December 10, 2003, Plaintiff complained of a lump on his right leg

stump which had been there for approximately two years (Tr. 278). Plaintiff stated that the lump was not really painful, but was irritating with his prosthesis rubbing against it. Upon examination, Plaintiff was unable to locate the lump (Tr. 278). Finally, Plaintiff complained that his medication was not effective in treating his low back pain; thus, his Vicodin was increased, and he was prescribed a new medication (Tr. 278-79).

### *Plaintiff's Testimony and Statements*

On March 17, 2004, Plaintiff appeared with counsel and testified before ALJ John Flannogin[2]. Plaintiff explained that, with regard to his low back pain, he was stiff in the morning, had trouble going out, moving around, and picking up things (Tr. 34). He said that the back pain worsened since the 1988 automobile accident that led to his amputation (Tr. 36). Plaintiff described a dull, constant back pain, which became sharp and shooting with movement (Tr. 34-35). He said he experienced phantom pain in the amputated leg that lasted as little as 15 minutes and as much as five hours (Tr. 37). Plaintiff alleged that the phantom pain interfered with his ability to concentrate so much so that he had difficulty following a television program (Tr. 37-38).

---

[2] Plaintiff's memorandum spells the ALJ's name "Flannigan" and the Commissioner's memorandum spells it "Flannogin". The Court adopts the Commissioner's spelling.

Plaintiff claimed that he constantly had sores on his right stump which emitted pus and made him unable to wear his prosthesis (Tr. 36). Plaintiff stated that, when he could not use his prosthesis, he would crawl around his house (Tr. 37). Plaintiff also claimed that he threw up once a week due to indigestion, nausea and heartburn which was caused by his pain medication—Hydrocodone, Amphitriptylene, and Tributinate (Tr. 38, 40-41). Plaintiff further testified that his medication caused dizziness, which occurred every morning for about 30 to 45 minutes after he woke up, and dry mouth (Tr. 41). Plaintiff stated that while he could drive, his sister did his shopping and he was unable to carry things great distances (Tr. 42).

Plaintiff alleged that he had difficulty standing up in the shower and getting in and out of the tub (Tr. 42). He said that he fell down at least twice a week and stumbled six or seven times a week because of his amputation (Tr. 45). Plaintiff testified that he did not sleep during the day (Tr. 43). He estimated that he could sit for 15 minutes at a time, stand for 15 or 20 minutes, and lift 5 or 6 pounds (Tr. 43-44). Plaintiff testified that his doctors had never placed any lifting restrictions on him (Tr. 44).

Plaintiff testified that he worked drafting amusement park rides (Tr. 51). In this job, Plaintiff was provided a rough draft of an amusement park ride and

he would finish the drawing (Tr. 51). Plaintiff performed his drafting work sitting or standing at the drawing board. He was not required to do any lifting or carrying (Tr. 52).

### *Testimony of Vocational Expert Roni Beall*

Vocational expert ("VE") Roni Beall testified at Plaintiff's administrative hearing. The VE testified that Plaintiff's past work as an amusement park ride draftsman was sedentary level work (Tr. 54-55). According to the VE, a hypothetical person, who was limited to sedentary work, could perform Plaintiff's past work as a draftsman (Tr. 55-56). The VE also stated that Plaintiff would not be employable if he had a weekly absentee rate of one to two days (Tr. 57-58).

## JURISDICTION & STANDARD OF REVIEW

The Court has jurisdiction over this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). It reviews the final decision of the Commissioner, in the form of the ALJ's decision, and upholds the findings of fact if they are supported by substantial evidence and no error of law was committed. See Griffith v. Callahan, 138 F.3d 1150, 1152 (7th Cir. 1998) (citing 42 U.S.C. § 405(g)); see also Micus v. Bowen, 979 F.2d 602, 604 (7th Cir. 1992). The Court's review encompasses the entire record to ascertain whether the findings

are supported by substantial evidence. See Schroeter v. Sullivan, 977 F.2d 391, 394 (7th Cir. 1992); 42 U.S.C. § 405(g). For purposes of a Social Security claim "substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." See Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). When determining whether substantial evidence exists, the Court reviews the record as a whole but does not substitute its judgment for the ALJ's "by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility." See Williams v. Apfel, 179 F.3d 1066, 1071-72 (7th Cir. 1999).

## ANALYSIS

To receive disability benefits, SSI and DIB claimants must be "disabled". See 42 U.S.C. § 423(a)(1)(D); 42 U.S.C. § 1382(a); Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993). A claimant is "disabled" if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." See 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a); see also Jones v. Shalala, 10 F.3d 522, 523-24 (7th Cir. 1993). A claimant is unable to engage in substantial gainful activity "only if his physical or mental

impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Social Security Regulations provide a five-step sequential inquiry to determine whether a plaintiff is disabled: 1) is the plaintiff currently unemployed; 2) does the plaintiff have a severe impairment; 3) does the plaintiff have an impairment that meets or equals one of the impairments listed as disabling in the Commissioner's regulations; 4) is the plaintiff unable to perform his past relevant work; and 5) is the plaintiff unable to perform any other work in the national economy. See 20 C.F.R. §§ 404.1520; Scheck v. Barnhart, 357 F.3d 697, 700 (7th Cir. 2004). An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. See 20 C.F.R. § 404.1520; Stein v. Sullivan, 892 F.2d 43, 44 (7th Cir. 1989). A negative answer at any point, other than step 3, stops inquiry and leads to a determination that the claimant is not disabled. See 20 C.F.R. § 404.1520; Stein, 892 F.2d at 44. The plaintiff bears the burden of proof through step four; if it is met, the burden shifts to the Commissioner at step five. See Brewer v. Chater, 103 F.3d 1384, 1391 (7th Cir.1997).

Here, the ALJ determined that Plaintiff's RFC allowed him to perform sedentary work and that Plaintiff could, therefore, perform his past work as a draftsman. Plaintiff contends that the ALJ's decision does not adequately account for his back pain, amputation, and use of medication.

Contrary to Plaintiff's assertions, the ALJ considered all relevant factors in deciding that Plaintiff was not disabled. Although Plaintiff testified that he spends most of his day sitting because he experiences pain after walking or standing 15 to 20 minutes, he also said that he could mow yards, fix lights, repair furniture, and paint before his prosthesis broke. Plaintiff admitted being able to perform these activities for almost one year after the alleged onset date of disability. The discrepancy between Plaintiff's stated limitations and admitted activities fairly allowed the ALJ to find that Plaintiff was not as limited as claimed. See Brooks v. Chater, 91 F.3d 972, 979 (7th Cir. 1996) (upholding ALJ's finding claimant's "testimony concerning his disabling pain and physical limitations to be untenable when contrasted with his reported daily activities and the relevant medical evidence . . . .").

While Dr. Budzenski's examination supported Plaintiff's claims, Dr. Graham and Dr. Burris both concluded that Plaintiff could lift less than 10 pounds frequently and stand or walk at least 2 hours during an 8-hour

workday. See 20 C.F.R. § 404.1527(f)(2)(i); Garrison v. Heckler, 765 F.2d 710 (7th Cir. 1985) (a reviewing physician's opinion can constitute substantial evidence to support an ALJ's decision). Neither Dr. Budzenski nor any other doctor placed a lifting restriction on Plaintiff. Furthermore, instead of limiting Plaintiff's work, his physician advised him to increase his physical activity and perform work "as tolerated." Beyond all this, medical evidence failed to substantiate Plaintiff's claims of pus-emitting sores which prevented him from wearing his prosthesis and there was no medical basis to suggest that Plaintiff's condition worsened after he was refitted for a prosthesis in December 2002.

As for Plaintiff's back pain, his medication could be adjusted to alleviate discomfort and the necessary medication was available via the Veterans Administration. Moreover, Plaintiff's initial evaluation for back pain in June 2003 showed that he was generally in good health and that his doctor told him to increase his physical activity and perform aerobic exercise three times a week.

Based on the record, the ALJ could reasonably find that Plaintiff could perform sedentary work. Because substantial evidence supported the ALJ's decision that Plaintiff was able to perform a significant number of jobs in the national economy, the ALJ correctly held that Plaintiff was not disabled for

purposes of the Social Security Act.

<u>Ergo</u>, Plaintiff's Motion for Summary Judgment (d/e 12) is DENIED and the Commissioner's Motion for Summary Judgment (d/e 15) is ALLOWED. This CASE IS CLOSED.

IT IS SO ORDERED.

ENTER:    November 22, 2005.

FOR THE COURT:

s/Charles H. Evans<br>
CHARLES H. EVANS<br>
United States Magistrate Judge